## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

[1]  **JEFF ROBERTS,**                         )
[2]  **ANDREW CASEY**                          )
[3]  **HALLI TRIPE-ROBERTS,**                  )
[4]  **TIA ROBERTSON,**                        )
[5]  **STACY SPOMER,**                         )
[6]  **MICHAEL ELY,**                          )
[7]  **IAN LEE,**                              )
[8]  **CHRISTOPHER SPURLOCK,**                 )
[9]  **MIKE STROUD,**                          )
[10] **SCOTT KOSLOW,**                         )
[11] **JEREMIAH WORRELL, and**                 )
[12] **DUSTIN SHEARGOLD, individually,**       )
                                               )
          **Plaintiffs,**                      )
                                               )
**v.**                                         )   **Case No.5:10-CV-01273-D**
                                               )
**[ 1] THE STATE OF OKLAHOMA ex rel.,**        )   Oklahoma County District Court
**BOARD OF REGENTS OF OKLAHOMA**               )   Case No. CJ-2010-7355
**COLLEGES and the**                           )
**[2] UNIVERSITY OF**                          )
**CENTRAL OKLAHOMA,**                          )
**[3] DEAN**                                   )   **JURY TRIAL DEMANDED**
**PAMELA WASHINGTON in her official**          )
**and individual capacity, and**              )   **ATTORNEY LIEN CLAIMED**
**[4] ERIC MARLOW in his official and**        )
**individual capacity**                        )
          **Defendants.**                      )

## AMENDED (PETITION) COMPLAINT

COMES NOW, the Plaintiffs, Jeff Roberts, Andrew Casey and Halli Tripe-Roberts (hereinafter referred to collectively as the "Employee/Plaintiffs") and Student/Tia Robertson, Stacy Spomer, Michael Ely, Ian Lee, Christopher Spurlock, Mike

Stroud, Scott Koslow, Jeremiah Worrell and Dustin Sheargold (hereinafter referred to collectively as the "Plaintiffs"), individually and for their Cause of Action against the Defendants, an organization operated by the State of Oklahoma ex rel. Board of Regents of Oklahoma Colleges and the University of Central Oklahoma (hereinafter referred to as "Defendant/UCO"), a constitutional agency, and Dean Pamela Washington, the Dean and Chief Administrative Officer for Defendant/UCO's College of Liberal Arts  (hereinafter referred to as the "Dean") and Coach Eric Marlow, the Director of Debate for Defendant/UCO's reporting directly to the Dean of the College of Liberal Arts (hereinafter referred to as the "Coach Marlow") (hereafter referred to collectively as the "Defendants") hereby allege and state[1]:

1.      The matters arise from the same set of operative facts relating to the harassment, retaliation and other illegal acts against the Plaintiffs while they were employed by or enrolled as a student at the University of Central Oklahoma.

2.      The Plaintiff/Students were at all times material hereto, students and members of the Debate Team at Defendant/UCO. Coach Marlow was in a position of control and authority over the student debaters.

3.      The Plaintiff/Employees were at all times material hereto, were supervised and reported to Coach Marlow placing him in a position of control and authority over them in their employment with Defendant/UCO.  Plaintiff/Roberts was an employee of

---

[1] This Amended Complaint is filed after Defendants UCO and Washington removed this action from Oklahoma County District Court and filed a Motion to Dismiss.  At the time Defendants filed their removal not all Defendants had been served;  Plaintiffs file this Amended Complaint without waiving their right to file a Motion to Remand.

Defendant/UCO, an accomplished debate coach, hired as the assistant director of debate, reporting to Coach Marlow.   His employment with Defendant/UCO was abruptly terminated on or about May 12, 2010. Plaintiff/Casey, was an employee of the Defendant/UCO, an assistant debate coach, an assistant graduate student and accomplished debater hired as an assistant coach reporting to Coach Marlow.   His employment with Defendant/UCO was constructively terminated on or about May 6, 2010. Plaintiff/Tripe-Roberts was an employee of the Defendant/UCO and was the wife of Plaintiff/Roberts.   She is an accomplished debater and was hired to assist with coaching and judging and reporting to Coach Marlow. Her employment was terminated on or about March 2, 2010.

4.     At all relevant time herein mentioned, Defendant/UCO's Debate Team and Coach Marlow reported to Ms. Pamela Washington, the Dean and Chief Administrative Officer for Defendant/UCO's College of Liberal Arts, responsible to the president and the provost/vice president of academic affairs and accountable to the students, faculty, administration, alumni and other shareholders."  University of Central Oklahoma Faculty Handbook - Roles and Responsibility 1.5.2.1.  In addition, the Dean is responsible for "providing sound management of personnel…"  University of Central Oklahoma Faculty Handbook - Roles and Responsibility 1.5.2.1 B.6., whose main campus is located in Edmond, Oklahoma County, State of Oklahoma.

5.     In Article 13B§2 of the Oklahoma Constitution it provides, "[T]he said Board of Regents of Oklahoma Colleges shall hereafter have the supervision,

management and control … and the power to make rules and regulations governing each of said institutions shall hereafter be exercised by and is hereby vested in the Board of Regents of Oklahoma Colleges created by this Act, and said Board shall appoint or hire all necessary officers, supervisors, instructors, and employees for such institutions."

6.      At all relevant time herein mentioned, Defendant/Board of Regents of Oklahoma Colleges were and now are an agency of the State of Oklahoma that, inter alia, governs the Defendant/University of Central Oklahoma whose main campus is located in Edmond, Oklahoma County, State of Oklahoma.

7.      At all relevant times herein mentioned the Plaintiffs were residents of Oklahoma County, State of Oklahoma.

## Jurisdiction and Venue

8.      The Plaintiff/Employees action is one for sex discrimination, harassment and retaliation in employment which is prohibited by Title VII of the Civil Rights Act of 1964, as amended, and by Oklahoma's public policy as prohibited by Oklahoma's anti-discrimination statutes, as well as tort and contract related claims.  Sex discrimination is also prohibited by the Fourteenth Amendment to the United States Constitution and is made actionable by 42 U.S.C. §1983.  Jurisdiction of the federal claims is vested in this Court under 42 U.S.C. §2000 e-5(f), 28 U.S.C. §§ 1331, 1343(a)(3).  The state law claims arise out of the same core of facts and jurisdiction over them is vested under 28 U.S.C. §1367.

9.      Plaintiff/Roberts exhausted his administrative remedy by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about June 8, 2010.  The EEOC issued its "right to sue letter" on or about August 3, 2010.  This case is timely filed within the required 90 days of his "right to sue letter."  Notice of Tort Claim was served upon the Board and Defendant/UCO on August 6, 2010, and the claim was not settled and was thus deemed denied by operation of law as of November 4, 2010. 51 O.S. §151 et. seq.

10.     Plaintiff/Casey exhausted his administrative remedy by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about June 10, 2010.  The EEOC issued its "right to sue letter" on or about June 10, 2010.  This case is timely filed within the required 90 days of his "right to sue letter."  Notice of Tort Claim was served upon the Board and Defendant/UCO on August 6, 2010, and the claim was not settled and was thus deemed denied by operation of law as of November 4, 2010. 51 O.S. §151 et.seq.

11.     Plaintiff/Tripe-Roberts exhausted her administrative remedy by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about June 10, 2010.  The EEOC issued its "right to sue letter" on or about June 10, 2010.  This case is timely filed within the 90 days of her "right to sue letter."  Notice of Tort Claim was served upon the Board and Defendant/UCO on August 6, 2010, and the claim was not settled and was thus deemed denied by operation of law as of November 4, 2010. 51 O.S. §151 et.seq.

12.     The Plaintiff/Students' action is one for sex discrimination, harassment and retaliation in violation of the Fourth, Ninth and Fourteenth Amendments to the United States Constitution.  This action and the relief sought are authorized by 42 U.S.C. §1983, including the Civil Rights Act of 1991, 42 U.S.C. §1981(a), 20 U.S.C. §§1681-1688 (Title IX of the Education Amendments of 1972), in addition to a pendent state law claim regarding the violation of contract, the Oklahoma Constitution, state statutes and common law torts.

13.     Jurisdiction is invoked under 28 U.S.C. §1331, 1343 & 1367 and the aforementioned statutory and constitutional provisions.  The state law claims arise out of the same core of operative facts.

14.     The Defendants, the State of Oklahoma ex rel., Board of Regents of Oklahoma Colleges, with its primary location in Oklahoma County, Oklahoma, is a governmental entity, which, inter alia, operates the University of Central Oklahoma. Defendant/UCO is an employer with the required number of employees, engaged in an industry or activity affecting commerce under Title VII, 42 U.S.C. § 2000e-(b) and (h); 29 CFR Part 578 and 29 U.S.C. §2561.

15.     Venue and jurisdiction are proper in Oklahoma County, the place where the cause of action arose and where the Defendants can be served with process.

## STATEMENT OF FACTS AS TO ALL CLAIMS

16.     The Defendants subjected a Plaintiff/Robertson, freshman student and member of the debate team, to quid pro quo sexual harassment by Coach Marlow, an

individual in direct authority and power over Plaintiff/Robertson.  When the Plaintiffs complained about the conduct of Coach Marlow, Defendant/UCO and those acting on its behalf retaliated by creating a hostile work environment for the Plaintiff/Employees and then wrongfully terminated their employment.

17.    Coach Marlow was in a position of control and authority over the Plaintiff/Students.  He controlled the scholarship money which affected many of the students' access to higher education; he controlled who became debate partners, which would increase or decrease a debater's likelihood for success; and he controlled who went to tournaments, which directly affected a debater's ranking in the national debate community.

18.    In addition, the Defendants subjected the Plaintiff/Students to a hostile environment in direct retaliation for complaining of the quid pro quo harassment, creation of a hostile environment and seeking to remedy the same.  A hostile environment so severe, pervasive, and objectively offensive that it undermined and detracted from their educational experience and resulted in the Plaintiff/Students being constructively expelled, denied the benefits of and participation in the Defendants' educational resources and opportunities.

19.    It was common knowledge that Coach Marlow used illegal drugs.  Coach Marlow openly discussed his history of illegal drug use with the Plaintiffs, and in his presence the use of illegal drugs and occurrence of frequent drinking was portrayed as the norm.  At times the Plaintiff/Students would be pressured to "party" with Coach Marlow.

For example he told Plaintiff/Lee to "come down and drink, or I will kill you."  The Plaintiffs have seen Coach Marlow either use and/or purchase illegal drugs in the debate squad room, the hallways of the Liberal Arts building and at various tournaments. It was his custom to smoke marijuana while driving the debaters to tournaments.

20.    Coach Marlow threatened the Plaintiffs regarding their obligation to keep silent about his illegal drug use, stating, "If I go down I will take you with me."  He described people that were willing to discuss the use of illegal drugs at Defendant/UCO as "program enders."   Coach Marlow referred to the van driven by Assistant Coach Roberts as the "losers' van" because Assistant Coach Roberts forbade smoking marijuana in his van.  Coach Marlow would offer to share his drugs with the students.

21.    Coach Marlow had shared with the Plaintiffs that he had a prior "dating" relationship with a student that worked in the Dean's office.  He also spoke in a demeaning and sexually derogatory manner toward females, such as referring to women as "cunts," "sluts," or "whores."  He described women's bodies in a demeaning fashion, such as "nice tits" and/or referring to a woman as "a piece of ass."

22.    On or about January 7, 2010 Plaintiff/Robertson confided in an assistant debate coach (hereinafter referred to as "Cissy") that Coach Marlow, a forty-three (43) year old man, twenty-five (25) years her senior, and in a position of direct authority over her, had been pressuring her for sexual favors since the beginning of the school year in August 2009.  In an attempt to secure these sexual favors he pressured her into using illegal drugs and engaging in underage drinking, lowering her inhibitions.  In addition,

when she resisted or refused his demands he would become increasingly controlling, manipulative and threatening.   On numerous occasions he threatened to terminate her scholarship, would send threatening photos, harassing and demeaning text messages and/or Facebook messages, such as sending her his phone number and stating, "If you don't cooperate, you will regret it."   This conduct was unwelcomed to the point of being predatory behavior.   For example, Coach Marlow took a picture of Plaintiff/Robertson's license tag, sending it to her mobile phone to show that he knew exactly where she was.

23.    After being informed of Coach Marlow's conduct the Dean requested that Plaintiff/Roberts provide a written statement, which she did on or about January 14, 2010.

24.    On or about January 15, 2010 the Dean informed Coach Marlow that a complaint alleging sexual harassment had been lodged against him by the freshman student and member of the debate team. The Dean requested Coach Marlow reply to her in writing.   This reply was provided on or about January 19, 2010.

25.    Retaliation began almost immediately. In January 2010 rumors began circulating around the debate community. The Plaintiffs' reputations in the debate community have been badly damaged by the false accusations spread by the Dean and others at or connected with Defendant/UCO.   Plaintiff/Robertson was labeled by the Dean as "a slut," "a liar," and "evil."   Coach Marlow and the Dean characterized all those who believed and supported Plaintiff/Robertson during this ordeal as "the crazies."

26.     On or about January 14 and 22, 2010 two (2) trips to scheduled tournaments were cancelled at the last minute by Coach Marlow in retaliation for the students' complaints.

27.     On or about January 22, 2010 Coach Marlow held a bi-weekly meeting where he apologized to the debate team for "mixing his hats" and admitted that he did have a sexual relationship with the freshman student.  Coach Marlow also stated that due to the student's inability to "keep their mouths shut," Defendant/UCO had been made aware of a party Coach Marlow held in his hotel room.  This party involved underage drinking and because of this the students would all be required to attend a presentation about the student code of conduct.

28.     On February 2, 2010 Coach Marlow sent an e-mail stating, "[J]ust wanted to remind you that Chris Snoddy is going to be at the meeting and will do a brief presentation about the student code of conduct and student behavior while traveling as a representative of Defendant/UCO.  This meeting is non-negotiable."  The Dean made it clear that, "if you don't show, you don't go.  You must attend to be eligible to travel with the team."

29.     The Plaintiff/Students started to lose focus and their studies suffered.  Several were afraid to attend class in the Liberal Arts building for fear of running into Coach Marlow or the Dean.  Several of the Plaintiffs dealt with the anxiety by not leaving their homes. Class attendance suffered for all the Plaintiff/Students, negatively affecting their grades. They described being very depressed, stressed out, and deeply confused

regarding what they saw as a moral problem. Many stated they did not want to debate or recruit for a "rape culture."

30.     On or about February 5, 2010, while driving to a tournament with the debaters in a rented van driven by Coach Marlow, he wanted to smoke marijuana as was his customary conduct while driving to and from debate tournaments.   When the Plaintiffs objected to his demands to smoke marijuana while driving, Coach Marlow retaliated by refusing to stop for food during the entire six and one-half (6.5) hour drive.

31.     On or about February 11, 2010 several of the debaters met with the Dean explaining their apprehension and discomfort with Coach Marlow continuing his role as the Director of Debate.   In addition, they complained that Coach Marlow did not have a valid driver's license and had not had one for several years.

32.     Defendant/UCO conducted an investigation on or about February 18, 2010. They issued recommendations approximately a month after the initial report of sexual harassment.   In the Defendant/Defendant/UCO's *Analysis and Recommendation for Sexual Harassment Complaint*, (hereafter referred to as the "Recommendation") the Dean, acknowledged "[A]n inappropriate relationship existed" and further acknowledged at some point the relationship had become nonconsensual stating, "[A]t some point,…Plaintiff/Robertson wanted the relationship to end and Coach Marlow continued to pursue her."   The Recommendation goes on to state that the freshman student feared that merely requesting Coach Marlow to not have any contact with her was an insufficient solution.   The Recommendation states, "[S]he fears that at some time during

her next three years of debate work he will begin his harassment again, or that there will be retribution or punishment for her actions later." In the Recommendation the Dean states, "[R]eluctantly, I agree that such a separation, where Coach Marlow retains coaching duties, would be very difficult to maintain over any length of time." Thus the decision was made to place Coach Marlow in merely an administrative and not a managerial role. The Plaintiff/Roberts was to take over the duties as head coach and Plaintiff/Casey was to become the assistant coach.

33.     On or about February 22, 2010, Dr. Brad J. Morelli, Senior Legal Counsel for Defendant/UCO, issued his response in the *"GRIEVANCE PROCESS FOR ALLEGED MISCONDUCT BY A FACULTY MEMBER"* filed by the Dean. In this document Dr. Morelli specifies that Coach Marlow "will be required to attend a sexual harassment workshop and that his role with the debate team become only administrative and not managerial during the remainder of Plaintiff/Robertson's eligibility/participation with the team. [Coach Marlow's] job description will be rewritten so that he has no oversight or decision making responsibilities for the teams and his salary will be reduced accordingly."

34.     However this change in responsibility on the part of Coach Marlow was never implemented. In fact this purported change was a ruse and a deception used by the Dean, Coach Marlow, and Defendant/UCO in an attempt to shield them from further sexual harassment, discrimination and retaliation claims.

35.     On or about February 25, 2010, Plaintiff/Roberts was called into a meeting with the Dean where she explained that any of his concerns for the Plaintiff/Robertson were ill-founded, and only a product of his own immature lack of knowledge about how "both the world and the accepted/normal sexual environment in our university operate." The Dean then told Plaintiff/Roberts that his actions had already placed him in a situation where he should start looking for other means of employment.  Plaintiff/Roberts was told to "grow up."  He was told he needed to persuade Plaintiff/Robertson and all others to "grow up" and accept how things worked.   The Dean went on to say that if Plaintiff/Roberts was unable to convince Plaintiff/Robertson to see things "her way, drop her accusations, and admit she was blowing things out of proportion" he would lose his job and the debate program would be cancelled.   The Dean explained that if Plaintiff/Roberts was able to do as she requested "there may be a full time position open for you in the near future."

36.     On or about March 9, 2010, a meeting was called by the Dean with the Defendant/UCO debate team.  In this meeting she expressed her disappointment with the rumors spreading around the debate community.  She also stated that she had received e-mails and phone calls from members of the debate community expressing moral indignation at her handling of the situation at Defendant/UCO.  The Dean then threatened to shut down the program and "clean house" unless the stories stopped.  The Dean instructed the Plaintiffs not to speak about the sexual harassment.  The only statements the Plaintiffs were allowed to say about the situation were that the Dean is "a very

conscientious woman" and "she can sleep well at night."  She made it clear that any other statement "would be punished."

37.     The Dean would tell Plaintiff/Roberts he was now the head coach while reminding him that Coach Marlow was still in control of the team.  Plaintiff/Roberts was given managerial obligations without any authority to fulfill those obligations, which allowed Coach Marlow to escape criticism by purporting to place Plaintiff/Roberts in the role of authority, a role he was never actually given.  In an e-mail sent by the Dean on April 2, 2010 to Plaintiff/Roberts the Dean stated, "[I] want to be clear.  Coach Marlow is still in charge of the Defendant/UCO debate program.  Any debater who does not respond to his requests in is danger of losing scholarship dollars or travel opportunities."  In a second e-mail sent the same date the Dean tells Plaintiff/Roberts "[I] am very worried about why the debaters are refusing to respond to Coach Marlow.  Please encourage them to do so.  If they cannot work with Coach Marlow, they need to find another debate team."

38.     In April, 2010 the Plaintiff/Students were for the first time required by the Dean to submit grade checks in order to determine scholarship eligibility. During the Plaintiff/Students tenure this was the first time grade checks were requested from them. Also the job for Assistant Coach of Debate was posted to a public debate website.  The posting stated, "This is the position formerly held by Assistant Coach Roberts." The Plaintiff/Students posted responses in support of Assistant Coach Roberts retaining his

position with Defendant /UCO and expressing their dissatisfaction in debating without his guidance.

39.     In April, 2010, Plaintiff/Casey met with the Dean to express his extreme discomfort in working with Coach Marlow and attempted to inform the Dean about the use of illegal drugs by Coach Marlow.  However, in this meeting the Dean made it clear she did not wish to know this information and did not pursue the conversation further.

40.     On or about May 5, 2010 Coach Marlow demanded that Plaintiffs return every squad computer and printer to the squad room the following day.  This effectively terminated the employment of Plaintiff/Casey.   Plaintiff/Casey's code to enter the Defendant/Defendant/UCO's computer system was deactivated and the code for the lock on the debate room door was changed. In May, 2010 the school year ended and Coach Marlow and the Dean would not discuss the status of any of the Plaintiffs' scholarships.

41.     On or about May 10, 2010 Plaintiff/Roberts was told by the Dean to surrender his keys to the building and squad room.  He was informed that Defendant/ UCO was conducting an inventory check and if anything were missing it would be considered theft and be attached to Plaintiff/Roberts bursar's account.  On this date the employment of Plaintiff/Roberts was terminated

42.     The summer is a busy time for debaters.  The topic for the debate year is issued in the summer, partners are selected and extensive research ensues in preparation for the next year's debate season.  Training camps and practice debate rounds begin in the

summer and debaters spend the summer in preparation for the following debate season. Generally the first debate tournament of the season occurs in early September.

43.     In June, 2010 all of the Plaintiff's names were removed from the website www.debateresults.com, a central website for the debate community which is the official means used to organize debaters' applications to tournaments.

**FIRST CAUSE OF ACTION**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AND VIOLATION OF STATE LAW UNDER *BURK V. K-MART* THROUGH DISCRIMINATION AND RETALIATION BY DEFENDANTS BOARD AND UCO**

The Plaintiffs incorporate by reference the preceding allegations of this Complaint as though set forth in full.

44.     Plaintiff/Employees were discriminated against because of the creation of and their opposition to quid pro quo sexual harassment, and a hostile work environment. They were retaliated against and wrongfully terminated for complaining of the quid pro quo sexual harassment, the creation of the hostile environment, and seeking to remedy the same.

45.     The Defendants engaged in unlawful intentional discrimination and engaged in discriminatory practices with malice and/or with reckless indifference to the federally protected rights of the aggrieved Plaintiffs.

46.     Plaintiff/Employees participation and engagement in protected activities afforded by the Civil Rights Act of 1964, as amended, as set forth hereinabove, was a motivating factor in Defendants' retaliation and wrongful termination of the

Plaintiff/Employees.  The Defendants' behavior was a pretext for continued harassment and retaliation toward the Plaintiff/Employees, and they bring this action under the provisions set forth hereinabove, the Oklahoma public policy as set forth in 25 O.S. §1101 et.seq, and *Burk v. Kmart*, 956 F.2d 213 (10th Cir. 1991).  The *Burk* remedy is clearly made available to Plaintiffs under *Vasek v. Board of County Commissioners of Noble County*, 2008 OK 35 and because 74 O.S. §840-2.5 is inapplicable to the Defendant/Board and Defendant/UCO by virtue of the Oklahoma Supreme Court decision in *State ex rel Regents of Oklahoma State University v. Oklahoma Merit Protection Commission*, 2001 OK 17 and *Shephard v Compsource Oklahoma*, 209 OK 25 foonote 7.

47.     As a direct and proximate result of the Defendants' retaliation against the Plaintiff/Employees they have each suffered mental anguish and emotional distress, sleeplessness, anxiety, injury to their professional reputation, embarrassment, humiliation, and loss of enjoyment of life, making damages in excess of One Hundred Thousand Dollars ($100,000.00).

48.     WHEREFORE, Plaintiff/Employees pray for judgment against Defendants as follows: Defendants be ordered to make the Plaintiff/Employees whole by providing all the remedies authorized by 42 U.S.C. § 2000e-5(g), including, but not limited to, reinstatement, back pay and front pay as hereinafter determined;

a.   Defendants be ordered to Plaintiff/Employees compensatory damages in an amount to be determined by the jury at the time of trial;

b.   Defendants be ordered to pay Plaintiff/Employees' costs, including expert witness fees, and a reasonable attorney's fee pursuant to 42 U.S.C. § 2000e-5(k); and;

c.   For such other and further remedies and/or make whole damages as the Court deems just and proper.

## SECOND CAUSE OF ACTION
## VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972 BY DEFENDANTS BOARD AND UCO

The Plaintiff/Students incorporate by reference the preceding allegations of this Complaint as though set forth in full.

49.     Plaintiff/Students' participation and engagement in protected activities afforded by Title IX of the Education Amendments of 1972, as amended, Title 20 U.S.C. §§ 1681-1688 as set forth hereinabove, was a motivating factor in Defendants' harassment, retaliation and denial of educational benefits afforded by the Defendant/ Board and Defendant/UCO as an educational institution.   The effect of the aforementioned actions in violation of Title IX of the Education Amendments of 1972, constitute discrimination against the Plaintiff/Students with respect to education because of the quid pro quo sexual harassment against Plaintiff/Robertson, the creation of a hostile environment against all the Plaintiff/Students following the disclosure of the quid pro quo harassment and the creation of a hostile educational environment, and retaliation against all Plaintiff/Students for their opposition to unlawful harassment and

discrimination.  None of these acts are related to any bona fide reason or requirement necessitated in providing for the education of university students.

50.    The effects of the aforementioned actions created a hostile educational environment which was sufficiently severe, pervasive, and objectively offensive such that it undermined and detracted from the Plaintiff/Students' educational experience and resulted in the Plaintiff/Students being denied the benefits of and participation in the Defendants' educational resources and opportunities.

51.    The aforementioned conduct by Coach Marlow and the Dean acting as representatives of Defendant/Board and Defendant/UCO were in violation of the Plaintiff/Students' constitutionally protected rights and were done while acting within the course and scope of their employment as faculty and administrator for Defendant/Defendant/UCO, under color of law statutes, ordinances, regulations, practices, customs and usage of the State of Oklahoma and Board of Regents of Oklahoma Colleges and the University of Central Oklahoma and utilized the respect and authority granted to them by state and local laws.

52.    The aforementioned harassment took place in a context and environment, which was solely and exclusively within the Defendants' control and dominion. Defendants were fully informed of the harassment and acted with deliberate indifference to known acts of harassment in its programs and activities.

53.    Plaintiff/Students further allege that the Defendants utterly failed to provide a means for them to make complaints of inappropriate behavior in an environment free of

retaliation and with reasonable assurances of confidentiality and safety resulting in the creation of an atmosphere in which the improper contact was permitted and when disclosed, was not stopped.

54.     The Defendants failed to take sufficient remedial action to correct, eliminate and prevent the recurrence of the offensive and unconstitutional acts described above. The Defendants instead retaliated against the Plaintiff/Students and subjected them to increased harassment, humiliation and intimidation.

55.     As a direct and proximate result of the Defendants' failure to properly provide for meaningful procedures, policies or protocols designed to remedy such unlawful activity, Plaintiff/Students were harassed, discriminated against and retaliated against when Plaintiff/Students complained of quid pro quo harassment, hostile environment harassment, and retaliation after asserting their right to oppose such discrimination.   The Plaintiff/Students have each suffered injury to their reputation, damage to their grade point average, lack of admission to graduate programs, damage to future career opportunities and future earnings, mental anguish, depression, emotional distress, sleeplessness, anxiety, embarrassment, humiliation, and loss of enjoyment of life.  Several Plaintiff/Students have been forced to relocate to other institutions of higher learning at an increased cost and several Plaintiff/Students have been denied future educational opportunities, further increasing the future economic loss making damages in excess of One Hundred Thousand Dollars ($100,000.00).

56.     WHEREFORE, Plaintiff/Students pray for judgment against the Defendants, jointly and severally, and each of them, as follows:

a. Defendants be ordered to make the Plaintiff/Students whole by providing all the remedies authorized by, pursuant to, and within statutory limitations;

b. Defendants be ordered to pay to Plaintiff/Students compensatory damages and punitive damages, if available, in an amount to be determined by the jury at the time of trial;

c. Defendants be ordered to pay Plaintiff/Students' costs, including expert witness fees, and a reasonable attorney's fee and;

d. For such other and further remedies and/or make whole damages as the Court deems just and proper.

### THIRD CAUSE OF ACTION
### NEGLIGENT HIRING , TRAINING AND SUPERVISION
### AGAINST DEFENDANT BOARD AND DEFENDANT UCO

The Plaintiffs incorporate by reference the preceding allegations of this Complaint as though set forth in full.

57.     Defendant/Board and Defendant/UCO had a duty to provide a workplace free of discrimination, harassment and retaliation to its employees.  Defendant/Board and Defendant/UCO breached its duty to provide a workplace free of discrimination,

harassment, and retaliation and was negligent in failing to have or to follow proper procedures in place to prevent these unlawful activities.

58.     Defendant/Board and Defendant/UCO knew or should have known that Coach Marlow was not fit to instruct college students.  These Defendants failed to perform an adequate background investigation prior to hiring Marlow, were negligent in retaining him after Defendants received student feedback indicating that Coach Marlow was not competent, and failed to train Coach Marlow in conducting himself appropriately, including a complete failure to provide training in the area of sexual harassment.

59.     Defendant/Board and Defendant/UCO knew or should have known that Dean Washington was ineffective in her ability to supervisor Coach Marlow and had become unfit to supervise or protect the interests of the students in her charge.  These Defendants failed to perform adequate evaluation of the Dean's supervisor of her subordinates, were negligent in retaining her after Defendants received student feedback indicating that Coach Marlow was not competent, and Dean Washington continued to retain Coach Marlow after learning her was in ineffective instructor and was conducting himself inappropriately, including a complete failure to provide training in the area of sexual harassment.

60.     It was foreseeable that the Plaintiffs would become victims of this unlawful activity at Defendant/Board and Defendant/UCO which enabled, if not encouraged, the kind of unlawful activity described herein.

61.     As a direct and proximate result of Defendant/Board and Defendant/UCO's failures Plaintiffs were harassed, discriminated against and retaliated against after engaging in protected activities.  The Plaintiffs suffered loss of income and benefits, along with embarrassment, humiliation, frustration over the threats of retaliation and loss of their careers and future opportunities at Defendant/Board and Defendant/UCO, or other debate programs in the debate community, generally.

62.     Plaintiffs have suffered mental anguish and emotional distress, sleeplessness, and anxiety resulting from the same.

63.     WHEREFORE, Plaintiffs pray for judgment against the Defendant/Board and Defendant/UCO, as follows:

    a.  For actual and compensatory damages as provided by applicable law, and as further determined by the jury at the time of trial;

    b.  For interest as provided by law;

    c.  For all costs;

    d.  For a reasonable attorney's fee and expert witness fee; and

    e.  For such other and further relief as the Court deems just and proper.

## FOURTH CAUSE OF ACTION
## BREACH OF CONTRACT BETWEEN PLAINTIFFS AND DEFENDANTS BOARD AND UCO

The Plaintiffs incorporate by reference the preceding allegations of this Complaint as though set forth in full.

64.     Defendant/Board and Defendant/UCO entered into a contractual relationship with the Plaintiffs. The said contract consisted of scholarship money paid to the Plaintiff/Students for their attendance at Defendant/UCO and for their participation on the debate team.     Defendant/Board and Defendant/UCO have denied the Plaintiff/Students there scholarship for the 2010-2011 school year and denied the Plaintiff/Students the benefit of their 2009/2010 scholarships by the creation of such a hostile educational environment to have effectively breached the contract with the Plaintiff/Students. Defendant/Board and Defendant/UCO breached that contract when it engaged in the unlawful activities listed above and by denying benefits they where entitled to under their scholarships.

65.     As a direct and proximate result of Defendant/Board's and Defendant/UCO's breach of contract the Plaintiff/Students have suffered harm. They have each suffered injury to their reputation, damage to their grade point average, lack of admission to graduate programs, damage to future career opportunities and future earnings, mental anguish, depression, emotional distress, sleeplessness, anxiety, embarrassment, humiliation, and loss of enjoyment of life.  Several Plaintiffs have been forced to relocate to other institutions of higher learning at an increased cost and several Plaintiffs have been denied future educational opportunities, further increasing the future economic loss making damages in excess of One Hundred Thousand Dollars ($100,000.00).

66.     WHEREFORE, Plaintiffs pray for judgment against Defendant/Board and Defendant/UCO, as follows:

a.  For actual and compensatory damages as provided by applicable law, and as further determined by the jury at the time of trial;

b.  For interest as provided by law;

c.  For all costs;

d.  For a reasonable attorney's fee and expert witness fee; and

e.  For such other and further relief as the Court deems just and proper.

## SIXTH CAUSE OF ACTION
## AGAINST DEFENDANTS WASHINGTON AND MARLOW
## TORTIOUS INTERFERENCE WITH CONTRACT

The Plaintiffs incorporate by reference the preceding allegations of this Complaint as though set forth in full.

67.     Plaintiff /Employees and Plaintiff/Students had a contractual relationship with Defendant/Board and Defendant/UCO related to their employment and their higher education respectively.

68.     The actions of Defendants Washington and Marlow resulted in the interference and ultimate disruption of the contractual relationship between the Plaintiffs and Defendants UCO and Board.

69.     The actions of Defendants Washington and Marlow were unauthorized and intentional and resulted in damage to the Plaintiffs.

70.     WHEREFORE, Plaintiffs pray for judgment against the Defendants Washington and Marlow, as follows:

a.      For actual and compensatory damages as provided by applicable law, and as further determined by the jury at the time of trial;

b.      For exemplary damages;

c.      For all costs;

d.      For such other and further relief as the Court deems just and proper.

**SIXTH CAUSE OF ACTION:**
**AGAINST DEFENDANTS WASHINGTON AND MARLOW**
**DEFAMATION, FALSE LIGHT AND INVASION OF PRIVACY**

71.     Defendants Washington and Marlow defamed the Plaintiffs both individually and/or collectively, resulting in damage to the Plaintiffs.

72.     Oklahoma law defines libel as "a false or malicious unprivileged publication which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation." Okla. Stat. tit. 12, § 1441. In this case the Defendants Washington and Marlow intentionally made false and defamatory statements concerning the Plaintiffs in unprivileged publication to third parties.  The Defendants are liable for both libel *per se* and libel *per quod.*

73.     Defendants Washington and Marlow, by their actions and words, placed the Plaintiffs, both individually and collectively, in a false light and needlessly invaded their privacy, resulting in damage to the Plaintiffs.

74.     WHEREFORE, Plaintiffs pray for judgment against the Defendants Washington and Marlow, as follows:

a.      For actual and compensatory damages as provided by applicable law, and as further determined by the jury at the time of trial;

b.      For exemplary damages;

c.      For all costs;

d.      For such other and further relief as the Court deems just and proper.

**SEVENTH CAUSE OF ACTION
AGAINST DEFENDANTS WASHINGTON AND MARLOW
BREACH OF FIDUCIARY RESPONSIBILITY**

75.      Defendants Washington and Marlow were fiduciaries in relationship to all the Plaintiffs.  Oklahoma law provides "a person is found to stand in a fiduciary relationship to another when he has rights and duties which he is bound to exercise for the benefit of that person."  *Renegar v. Bruning,* 123 P.2d 686, 688 (Okla. 1942).

76.      In engaging in the harassment, retaliation, and other wrongful activities described in this Complaint, the Defendants Washington and Marlow breached their fiduciary duties to the Plaintiff/Students and the Plaintiff/Employees, causing them damage.

77.      WHEREFORE, Plaintiffs pray for judgment against the Defendants Washington and Marlow, as follows:

a.      For actual and compensatory damages as provided by applicable law, and as further determined by the jury at the time of trial;

b.      For exemplary damages;

c.      For all costs;

    d.      For such other and further relief as the Court deems just and proper.

## **<u>PRAYER FOR RELIEF</u>**

Plaintiffs pray that Judgment be entered against the Defendants as set forth above and for further relief as the Court deems just and proper.

                                    Respectfully submitted,

                                  _____

                                  Jacque Pearsall, OBA # 18317
                                  6303 North Portland Ave. Suite 300
                                  Oklahoma City, Oklahoma 73112
                                  Telephone:    (405) 606-8464
                                  Facsimile:    (405) 942-2661
                                  and
                                  Ramona Wolf, OBA # 19257
                                  6303 North Portland Ave. Suite 300
                                  Oklahoma City, Oklahoma 73112
                                  Telephone:    (405) 601-1223
                                  Facsimile:    (405) 601-1233
                                  ATTORNEYS FOR PLAINTIFFS